[Civ. No. 17171. Second Dist., Div. One. Sept. 18, 1950.]

E. T. FOLEY, Plaintiff and Respondent, v. RIVERSIDE IRON AND STEEL CORPORATION et al., Appellants; H. S. WEST et al., Defendants and Respondents; KAISER COMPANY, INC. (a Corporation), Cross-Defendant and Respondent.

George R. Schmidt, Alley, Cole, Grimes & Friedman, Herbert Dannett, Roger Hinds and F. C. Mebane, Jr., for Appellants.

Cosgrove, Cramer, Diether & Rindge for Plaintiff and Respondent.

Guthrie, Darling & Shattuck and Gerald Bridges for Defendants and Respondents.

Thelen, Marrin, Johnson & Bridges and Philip Grey Smith for Cross-Defendant and Respondent.

DORAN, J.—The controversy herein relates to a tract of land in Riverside County containing iron ore deposits, commonly referred to as the Iron Chief property. In April, 1940, the Southern Pacific Company, owner of the fee, executed a complicated Lease and Sale Agreement of this property for a 10-year term to Bralowe Corporation which had been organized by appellant Harlan H. Bradt and defendants West and Long. Bralowe immediately assigned the agreement to Riverside Iron and Steel Corporation of which Bradt owned all the stock. In the agreement Bralowe had undertaken to prosecute mining operations, paying the lessor stated royalties with a guaranteed minimum. It was further provided that after 10 years, if the agreement had not been previously terminated, ''The lessor would sell and the lessee would purchase said mining property for a purchase price of $1,500,000.00,

all sums theretofore paid by the lessee as royalties to be credited on account of said purchase price." The assignee, Riverside, assumed all the lessee's obligations.

Thereafter, Riverside and Harlan H. Bradt, owner of all Riverside stock, approached the respondent Foley, seeking financial assistance and to interest Foley in the project, and on November 11, 1942, the parties entered into Option Contract, which was amended on February 19, 1943. This Option Contract, as amended, granted Foley the privilege of purchasing the interest of Riverside-Bradt in the Lease and Sale Agreement executed to Bralowe by the Southern Pacific, for a consideration of $109,983.24. Riverside-Bradt accepted as consideration for granting this privilege, the sum of $15,000. Foley elected to exercise the option, paying Southern Pacific $24,983.24 as agreed, and paying Riverside-Bradt an additional $10,000, whereupon Riverside-Bradt in writing transferred to Foley all interest in the Lease and Sale Agreement. For the purpose of protecting Foley in the event that Southern Pacific refused to consent to the assignment, Bradt indorsed and delivered to Foley certificates for all the Riverside stock, namely 1,000 shares. In February, 1944, Southern Pacific, for a consideration of $1,000,000 conveyed to Kaiser the fee in the Iron Chief property subject to the Lease and Sale Agreement hereinbefore mentioned.

On July 11, 1944, Riverside-Bradt and Foley entered into a so-called "Clarification Agreement" under which Foley agreed to protect the leased property against forfeiture, retaining, however, the right to reconvey the leasehold to Riverside-Bradt and be absolved from obligation by serving a six months notice of withdrawal. It was provided that "Foley shall have a 75% interest and Riverside and Bradt shall have a 25% interest" in net profits derived from operation of the property, "in the proceeds of a sale or other disposition of the entire leasehold," and in the fee to the property "should the leased property be acquired pursuant to the Lease and Sale Agreement."

The Clarification Agreement obligated Foley to furnish Bradt with copies of operation reports, operating agreements and agreements for sale of ore, "and whenever feasible the same shall be mailed to Bradt prior to the execution of said agreements or leases." However, Foley was to have exclusive control and direction of the leased premises including the sole right to determine the terms and conditions of all such agree-

ments, as is conceded in appellant's brief. Furthermore, the agreement expressly provided that *"After consultation with Bradt and hearing fully Bradt's views, Foley shall have the sole right of determining when and at what price the leasehold shall be sold or leased."* (Italics added.) The present controversy to a large extent involves a consideration of the italicized provision and the question whether Foley complied therewith in selling the leasehold to Kaiser.

Concurrently with the execution of the Clarification Agreement, Foley addressed to Riverside-Bradt a so-called "Trust Letter" reading as follows: "In consideration of the agreement between us this day, and in lieu of the 25% interest going to you as therein provided, I agree upon your written request, to hold a 25% undivided interest in the leasehold estate and Lease and Sale Agreement heretofore assigned to me in trust for you, whenever the consent of the lessor under the Lease and Sale Agreement is obtained. I do not hereby assume any obligation to procure consent; I do not waive any right to withdrawal under the option contract."

On March 10, 1944, Foley retained the defendants Vinnell and Dunton doing business as Mineral Materials Company, to mine the property on a cost-plus basis which agreement was approved in writing by Riverside-Bradt. Mining operations were commenced on March 15, 1944, and were discontinued May 25, 1944, and as a result of this operation Vinnell and Dunton became counterclaimants in the present controversy. The cross-complainants West and Long assert certain claims arising out of agreements made with Riverside-Bradt in reference to promoting the Iron Chief.

After some negotiation, a written memorandum was executed on December 11, 1945, setting forth the terms on which Foley would sell to Kaiser the Lease and Sale Agreement for a consideration of $1,132,811.35. The period for accepting this agreement of sale was, on February 21, 1946, extended for a 30-day period, and on April 10, 1946, Kaiser advised Foley of the former's acceptance. An escrow was thereafter opened, and the sale to Kaiser consummated.

Bradt-Riverside later repudiated the sale of the leasehold to Kaiser, contending that Foley had violated the terms of the various agreements in reference thereto. Agreements between Riverside-Bradt and West and Long were likewise repudiated. Foley instituted the present action for declaratory relief for the purpose of determining the proper division of the $1,132,811.35 received from Kaiser. Under a cross-com-

plaint filed by Riverside-Bradt just prior to trial, Kaiser was made a party to the action. Foley's complaint sets forth that out of the amount received from Kaiser appellant Riverside-Bradt is entitled to receive $75,000 as reimbursement under the agreement, and a further sum of $198,325.66, or a total of $273,325.66 together with the pledged stock in Riverside; that defendants Vinnell and Dunton are entitled to $59,710.96; that plaintiff is entitled to the balance, which amounts are tendered into court.

The trial court found that the sale of the leasehold by Foley to Kaiser was not made without the knowledge of Riverside-Bradt as alleged by appellant; that such sale was valid and was not contrary to agreement or in breach of duty; that the lessee's interest in the Iron Chief did not have a value in excess of the sum received, and that the price paid by Kaiser was fair and adequate and the best obtainable under the circumstances. Riverside-Bradt was found to be entitled to $198,418.82, plus reimbursement of $75,000; that out of said sums defendant Long was entitled to $81,898.48, defendant West was entitled to $76,898.48. It was further found that Vinnell and Dunton were entitled to $84,919.74.

Appellant's contentions, in brief, are that Foley, as fiduciary, violated the fiduciary duties owing to Riverside, by failing to diligently mine and prospect the Iron Chief property; by selling the Iron Chief lease to Kaiser at an inadequate price; by failing to disclose material facts and by misrepresenting valuation of the property, and by concealing and suppressing from Kaiser the existence of the so-called Trust Letter. It is also claimed that Foley failed to consult with Bradt and hear fully the latter's views concerning the proposed sale to Kaiser, as stipulated in the agreement; and that Kaiser took with both actual and constructive knowledge of Riverside-Bradt's equitable interest and of the fiduciary relationship existing between Foley and Riverside-Bradt. Error is also predicated on an alleged exclusion of evidence relating to value.

As stated in the respondent Foley's brief, "Whether Foley complied with or violated Paragraph (8) of the Clarification Agreement was a prominent issue" in the case. This paragraph gave Foley the sole right of determining when and at what price the leasehold should be sold and leased, "After consultation with Bradt and hearing fully Bradt's views." The record discloses evidence which, if believed, supports the trial court's finding that "with the knowledge, acquiescence and approval of defendants, Riverside and Harlan H. Bradt,"

Foley entered into negotiations ". . . with a view to a possible sale to Kaiser of the entire leasehold estate," and "that after consultation with defendant Harlan H. Bradt, and hearing fully the latter's views with respect thereto," Foley arranged the sale to Kaiser.

The evidence discloses, as noted in the Foley brief, "that no one was more familiar with the Iron Chief property," in all phases· of operation than was Bradt. It was Bradt who originally negotiated the lease from Southern Pacific, and after making the agreement with Foley, Bradt acted in the capacity of advisor concerning the Iron Chief and was paid $11,000 and expenses for such services. There is also evidence that Bradt and Foley communicated orally and by letter in reference to Kaiser negotiations, and that in a telegram of February 25, 1945 (Exhibit F-47), Bradt advised Foley that "sitting tight seems best procedure for present."

There is evidence that Foley first endeavored to interest Kaiser in purchasing ore from the Iron Chief, but without success. On January 26, 1944, Kaiser secured title to the fee of the Iron Chief property, and thereafter Foley and Kaiser were in conference in an endeavor to work out a sale of the lease to Kaiser. On December 10, 1945, Foley telephoned to Bradt who was in Montreal, that Kaiser had offered $1,000,000 for the leasehold contingent on getting the money from the R.F.C. Bradt stated that the offer sounded interesting but thought the price was less than the mine was intrinsically worth, to which latter statement Foley observed that it was not a question of intrinsic value but of how much could be obtained. Bradt wished to discuss the matter with others. Foley stated that Kaiser desired to have an answer the following day.

At this point there is a direct conflict of testimony as to which party was to call the other the next day; Bradt insisting that Foley was to call again, and Foley testifying that the Kaiser deal was held up all the next day waiting for Bradt to call but that no call was received. Apropos this matter, Bradt was asked at the trial, "Did you tell Mr. Foley that he had no right to make a sale under those agreements?", to which Bradt replied, "I don't think so."

Foley did not again hear from Bradt until December 16, 1945, when Bradt telephoned and was advised by Foley that a tentative agreement had been made with Kaiser at a figure some $130,000 above the million originally offered. Bradt then stated that the division of 75 per cent to Foley and

25 per cent to Bradt as specified in the contract was not satisfactory, according to Foley's testimony, ''and he said that he was going to write me a letter telling me he didn't approve of the sale on that basis, and that he was also going down to Washington . . . and see if he couldn't upset the deal.'' Bradt did not write such a letter, however, and did not again communicate until ''at the close of the escrow, and a flock of telegrams and letters came in from Mr. Bradt and Burke and Burke, professing surprise at the sale.''

Notwithstanding the voluminous briefs filed herein and a stenographic record of more than 2,800 pages of evidence, appellant's position largely resolves itself into the simple contention that the trial court should have believed the evidence of appellant rather than that introduced by respondents. That there was some conflict in testimony relating to Foley's conduct and in reference to negotiations between Foley, Bradt and others, cannot be denied. This fact, however, under the usual rules governing appellate review, affords no ground for reversal where the findings are supported by substantial evidence. As hereinbefore indicated, the record discloses such evidence.

The trial court was confronted with a mass of evidence dealing with all phases of a somewhat complicated factual situation. The parties presented to the court, *in extenso*, all matters in any manner connected with the controversy. These items of evidence included not only the various agreements and documents directly involved, but also the negotiations leading up to the execution thereof, and many collateral facts more or less illuminating and explaining the different transactions. Out of all this maze of evidence and contentions, the trial court appears to have arrived at a final solution which in the state of the record, cannot in any sense be deemed unreasonable or unsupported.

In examining the record it immediately becomes evident that both Foley and Bradt were experienced experts in the mining field, and that they understandingly entered into contractual relations designed to benefit each party. It is likewise apparent that Bradt, who now complains of the eventual sale to Kaiser and the amount realized therefrom, was at all times in a position to know what was going on in reference to the transaction in all its phases; it is a reasonable conclusion from the evidence, despite Bradt's contrary testimony, that Bradt was so informed. That the transaction did not, perhaps, result in producing as much money as had been hoped for, is beside

the point. Doubtless both parties likewise understood that their efforts might even result in a complete loss rather than in the expected profit.

In respect to the cross-complaint of Riverside-Bradt, seeking to invalidate the sale to Kaiser so far as said sale related to the interest of' Riverside-Bradt, and to declare a trust in reference thereto, the cross-complainants obviously assumed the burden of proof. In order to succeed in such cross-action Riverside-Bradt was required to prove that Foley had breached contractual and fiduciary duties owing to cross-complainants.

The trial court expressly found that there had been no such breach of duty; that the sale to Kaiser was valid, and that the consideration paid was fair and adequate. This merely involved a question of fact and a consideration of the credibility of the witnesses produced by the respective parties. Even if the appellate court were of the belief that a different result should have been reached on the evidence, reversal would not be warranted so long as support for the trial court's findings is found in the record. No reversible error either in respect to the exclusion of evidence or otherwise, has been made manifest.

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied October 16, 1950, and appellants' petition for a hearing by the Supreme Court was denied November 16, 1950.